[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13673

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 22, 2011
JOHN LEY
CLERK

D. C. Docket No. 07-00009-CR-T-27-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE MICHAEL JULIAN,
a.k.a. Kid,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 22, 2011)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PRYOR, Circuit Judge:

The issue in this appeal is whether the district court erred when it held that it

was required to impose consecutive sentences on a defendant who committed murder with a firearm in the course of a crime of violence and a drug trafficking crime, 18 U.S.C. § 924(j). Sentences for the use of a firearm in the course of a crime of violence or drug trafficking crime must run consecutive to any other sentences, id. § 924(c)(1)(D)(ii), but section 924(j), which applies to the same conduct that causes death, does not mention a requirement of consecutive sentencing. Jermaine Michael Julian appeals his consecutive sentences of life terms of imprisonment on the ground that the district court erred when it held that sentences under section 924(j) must run consecutively. Julian argues that the district court had the discretion to impose concurrent sentences because section 924(j) creates a separate offense not governed by the requirement of consecutive sentences in section 924(c). The United States responds that the prohibition of concurrent sentences in section 924(c) applies to sentences under section 924(j) because section 924(j) creates a sentencing factor, not a separate offense. Two of our sister circuits have adopted the interpretation advanced by the United States, but we disagree with those decisions. Because Julian's interpretation of section 924(j) is supported by the plain text of the statute, we vacate Julian's sentence and remand for resentencing.

2

# I. BACKGROUND

On October 19, 2006, Jermaine Michael Julian, David Jones, and at least one other individual robbed members of a local gang known as the "Valley Boyz" at a residence in Bartow, Florida. Julian and the other robbers confronted three members of the Valley Boyz: Carlton Potts, Prayer Hamilton, and Tyrone Williams. Julian shot Potts once in the chest. Julian and the other robbers then stole money, cocaine, and firearms from the residence before they fled. Potts later died from the gunshot wound.

A confidential informant told police that Julian was involved in the crimes, and Williams later identified Julian from a set of photographs. When the authorities arrested Julian, he was in possession of two handguns, including one linked to the murder of Potts. Julian admitted his involvement in the robbery, but denied that he had murdered Potts. A federal grand jury indicted Julian for the murder of Potts and for other offenses. The indictment charged in two counts that Julian "knowingly and intentionally used a firearm, during and in relation to" a crime of violence and a drug trafficking crime, "and in the course of using said firearm . . . did kill Carlton Potts . . . in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(j)(1) and 1111(a) and 2." The indictment charged Jones with aiding and abetting Julian in the two counts of murder. The indictment

3

also charged Julian and Jones with robbery, id. §§ 2, 1951; conspiracy to commit robbery, id. § 1951; being a felon in possession of a firearm, id. § 922(g)(1); possession of marijuana with intent to distribute, id. § 2; 21 U.S.C. § 841(a)(1), (b)(1)(D); possession of cocaine with intent to distribute, 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1), (b)(1)(C); and conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841(b)(1)(B)(ii)(II), 846. Jones pleaded guilty to all charges and received a prison sentence of 780 months. See United States v. Jones, No. 08-12436 (11th Cir. Dec. 2, 2008).

At trial, the jury convicted Julian of all eight charges. The district court then conducted a sentencing phase, and the jury imposed a sentence of life imprisonment instead of the death penalty for each count of murder.

Julian objected to the recommendation in the presentence investigation report that he be sentenced to consecutive life sentences for the counts of murder, but the district court overruled Julian's objection. The district court ruled that it was required to impose consecutive sentences based on the provision that "no term of imprisonment imposed on a person under [subsection (c)] shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D)(ii). The district court reasoned that the requirement of consecutive sentencing applies to "all offenses in which [924(c)(1)] is implicated," including

4

section 924(j). The court then sentenced Julian to two life sentences on the murder charges and a total sentence of 115 years for the other crimes and ordered that all of the sentences run consecutively.

## II. STANDARD OF REVIEW

"We review questions of statutory interpretation de novo." United States v. Phaknikone, 605 F.3d 1099, 1107 (11th Cir.), cert. denied, 131 S. Ct. 643 (2010).

## III. DISCUSSION

Julian and the United States present starkly contrasting interpretations of section 924(j) and its relation to section 924(c). Julian argues that the district court had the discretion to impose concurrent sentences based on the plain language of sections 924(c)(1)(D)(ii) and 924(j). The United States argues that section 924(j) establishes a sentencing factor, not a separate offense, and section 924(c)(1)(D)(ii) required the district court to impose consecutive sentences for an underlying violation of section 924(c). We agree with Julian.

To resolve this issue, we begin with the text of section 924(c), about which there is little dispute. Both parties agree that section 924(c) creates an offense and a mandatory minimum sentence for that offense as follows: "[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm,

5

shall, in addition to the punishment provided for such crime of violence or drug trafficking crime" receive a sentence of "not less than five years." 18 U.S.C. § 924(c)(1)(A)(i). Both parties also agree that a criminal who violates section 924(c) is subject to a higher mandatory minimum sentence if he brandishes or discharges a firearm or uses a certain type of firearm, such as a machinegun. Id. § 924(c)(1)(A)(ii)–(iii), (c)(1)(B)(i)–(ii). Both parties agree that, for the offense created by section 924(c), concurrent sentences are prohibited as follows: "[N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." Id. § 924(c)(1)(D)(ii).

The parties disagree about how to understand section 924(j), which prescribes as follows sentences for conduct that violates section 924(c) and leads to death:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
> (1) if the killing is a murder (as defined in section 1111) be punished by death or by imprisonment for any term of years or for life; and
> (2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

Id. § 924(j). Julian contends that section 924(j) creates a separate offense and a punishment that is not governed by the prohibition of concurrent sentences in section 924(c)(1)(D)(ii). The United States argues that section 924(j) creates a

6

sentencing factor, not a separate offense, and is governed by the prohibition of concurrent sentences.

Julian's interpretation is supported by the plain language of section 924(j) and section 924(c)(1)(D)(ii). Section 924(c) prohibits concurrent sentences, but this prohibition applies only to "a term of imprisonment imposed on a person under this subsection." Id. § 924(c)(1)(D)(ii). Section 924(j), not section 924(c), provided Julian's sentence. This reading is consistent with decisions of our sister circuits that have declined to read section 924(o), which punishes "conspir[acies] to commit an offense under subsection (c)," id. § 924(o), as requiring consecutive sentences. See United States v. Clay, 579 F.3d 919, 933 (8th Cir. 2009); United States v. Fowler, 535 F.3d 408, 422 (6th Cir. 2008).

The United States, quoting United States v. Battle, 289 F.3d 661, 666 (10th Cir. 2002), urges that "section 924(j)(1) does not establish a crime discrete from that defined in section 924(c), but merely 'describes the sentencing factors that must be proved in order to impose a consecutive sentence of death, life imprisonment or a term of years[]'" for a violation of section 924(c), but we disagree. An element is essential to the definition of an offense, but a sentencing factor guides the discretion of a court in sentencing an offender based on his characteristics or the manner in which he committed the offense. See Castillo v.

7

United States, 530 U.S. 120, 126, 120 S. Ct. 2090, 2094 (2000). "Elements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt . . . . Sentencing factors, on the other hand, can be proved to a judge at sentencing by a preponderance of the evidence." United States v. O'Brien, 130 S. Ct. 2169, 2174 (2010). See also McMillan v. Pennsylvania, 477 U.S. 79, 91, 106 S. Ct. 2411, 2419 (1986). The facts that the government must prove for a criminal to receive a sentence—including a potential sentence of death—under section 924(j) comprise elements, not sentencing factors.

The Supreme Court has addressed twice whether other provisions of section 924(c) establish elements or sentencing factors, and these decisions support our reading of section 924(j). See Harris v. United States, 536 U.S. 545, 122 S. Ct. 2406 (2002); Castillo, 530 U.S. 120, 120 S. Ct. 2090. In Harris, the Court held that the provisions of section 924(c) that increase the minimum sentence for criminals who brandish or discharge a firearm, 18 U.S.C. § 924(c)(1)(A)(ii)–(iii), are sentencing factors, not elements. 536 U.S. at 556, 122 S. Ct. at 2414. Congress listed the elements of a complete crime in section 924(c) and, after the word "shall," enumerated in separate subsections the penalties applicable to criminals who brandish or discharge a firearm. Id. at 552–53, 122 S. Ct. at 2411–12. These subsections did "not repeat the elements from the principal paragraph." Id. at 553,

8

122 S. Ct. at 2412. The Court found significant that Congress has not traditionally treated the brandishment or discharge of a firearm as an element of an offense. Id. These provisions instead raise the minimum sentence for a violation of section 924(c) from five years to seven years and ten years, and the Court explained that these "incremental changes in the minimum . . . are precisely what one would expect to see in provisions meant to identify matters for the sentencing judge's consideration." Id. at 554, 122 S. Ct. at 2413. In contrast with the sentencing factors pertaining to brandishment and discharge, the Supreme Court in Castillo interpreted, as a distinct offense, the provision of section 924(c) that provides sentences for criminals who use machineguns in the course of violations of section 924(c), 18 U.S.C. § 924(c)(1) (1988, Supp. V) (current version at 18 U.S.C. § 924(c)(1)(B)(ii)). 530 U.S. at 121, 120 S. Ct. at 2091. Congress included both the elements of a violation of section 924(c) and the penalty provision for the use of a machinegun "in a single sentence, not broken up with dashes or separated into subsections." Id. at 125, 120 S. Ct. at 2093. The Court also explained that "[t]raditional sentencing factors often involve either characteristics of the offender, such as recidivism, or special features of the manner in which a basic crime was carried out," and the use of a machinegun is not a "special feature[] of the manner" in which a firearm offense is committed because "the difference between

9

carrying . . . a pistol and carrying a machinegun . . . is great, both in degree and kind." Id. at 126, 120 S. Ct. at 2094. The Court also reasoned that, unlike the additional sentences of two years and five years given under the brandishment and discharge provisions, the length of the additional mandatory minimum sentence for using a machinegun—25 years—suggested that Congress intended the use of a machinegun to be an element, not a sentencing factor. Id. at 131, 120 S. Ct. at 2096.

Based on the approach of the Court in Harris and Castillo, we conclude that Congress intended section 924(j) to define a distinct offense, not a sentencing factor. The Court stated in Harris that sentencing factors are often enumerated in subsections under a paragraph that defines an offense, 536 U.S. at 552, 122 S. Ct. at 2412, but Congress placed the punishment for homicides that occur in the course of violations of section 924(c) in the separate section 924(j). Unlike the provision for sentencing factors construed in Harris, but like the provision that defines a distinct offense construed in Castillo, section 924(j) defines a crime and is followed by subsections that provide sentences. We also do not consider homicide to be a "special feature" of the way section 924(c) may be violated. See Castillo, 530 U.S. at 126, 120 S. Ct. at 2094. Moreover, an even greater difference in degree and kind than the distinction between the use of a pistol and the use of a

machinegun exists between the use of a firearm without any accompanying physical injury and the use of a firearm to effect homicide. In <u>Castillo</u>, the Court also held that a considerable increase in the applicable sentence for the use of a machinegun suggested that Congress considered the provisions about use of a machinegun to define a separate offense and not a special subset of violations of section 924(c). We similarly read section 924(j) to establish, as an element of a separate offense, a fact—a resultant homicide—that could subject a defendant to the ultimate punishment: the death penalty.

Another decision of the Supreme Court also supports our reading of section 924(j). <u>See</u> <u>Jones v. United States</u>, 526 U.S. 227, 119 S. Ct. 1215 (1999). The Court in <u>Jones</u> held that a provision about increased punishment for serious bodily injury in the robbery context indicated congressional intent to define an element of a separate, aggravated form of a basic crime, not a sentencing factor. <u>Id.</u> at 235–36, 119 S. Ct. at 1220–21. We similarly construe the provision about increased punishment for a homicide to define an element, not a sentencing factor.

The distinction drawn between elements and sentencing factors in decisions that have interpreted the Fifth and Sixth Amendments also supports our interpretation that section 924(j) defines elements of a separate offense. Other than provisions that make recidivism the basis for a greater sentence, <u>see</u> <u>Almendarez-</u>

Torres v. United States, 523 U.S. 224, 247, 118 S. Ct. 1219, 1232–33 (1998), the Sixth Amendment prohibits imposition of a sentence greater than "the maximum [a criminal] would receive if punished according to the facts reflected in the jury verdict alone." Apprendi v. New Jersey, 530 U.S. 466, 483, 120 S. Ct. 2348, 2359 (2000). Capital crimes are no different. See Ring v. Arizona, 536 U.S. 584, 589, 122 S. Ct. 2428, 2432 (2002). Section 924(j) increases the maximum penalty a defendant may receive beyond the sentence applicable to a defendant found to have violated only the elements listed in section 924(c). Life imprisonment is the maximum sentence a defendant may receive under section 924(c) for using a firearm in a crime of violence or drug trafficking offense, United States v. Woodruff, 296 F.3d 1041, 1050 (11th Cir. 2002), but a defendant may receive the death penalty under section 924(j). The Fifth Amendment also requires the allegation of each element of an offense in a federal indictment. See Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974). The United States appreciated these constitutional implications of the distinction between elements and sentencing factors when it prosecuted Julian. The United States treated as elements all of the facts necessary to convict Julian under section 924(j) because it charged these facts in the indictment and proved them to a jury beyond a reasonable doubt.

Another textual clue in section 924(c)(5) compels us to read section 924(j) to allow concurrent sentences. "It is a cardinal principle of statutory construction that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" Nunnally v. Equifax Info. Servs., LLC, 451 F.3d 768, 773 (11th Cir. 2006) (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441, 449 (2001)). Any interpretation of section 924(j) that would require sentences imposed under that section to run consecutively would make superfluous section 924(c)(5), a provision that uses language identical to the language of section 924(j) to prescribe the punishment for criminals who use armor-piercing ammunition during or in relation to a crime of violence or drug trafficking crime and cause death. 18 U.S.C. § 924(c)(5)(B). Because any crime where "death results from the use of [armor-piercing] ammunition," id. § 924(c)(5)(B), is also a crime that "causes the death of a person through the use of a firearm," id. § 924(j), section 924(c)(5) would be surplusage if no difference existed between the sentences that these two provisions prescribed. The interpretation we adopt gives meaning to both section 924(j) and section 924(c)(5). Unlike section 924(c)(5), which imposes a "term of imprisonment . . . under [subsection 924(c)]," id. § (c)(1)(D)(ii), and is subject to the prohibition on concurrent sentences, we do not read section 924(j) to be subject to the prohibition

13

on concurrent sentences.

The United States relies on provisions that require that sentences imposed for violations of section 924(c) be "in addition to the punishment provided" for the underlying crime of violence or drug trafficking crime, id. § 924(c)(1)(A), (c)(5), but this reliance is misplaced. A violation of section 924(c) is an element of the offense created by section 924(j), and the language quoted by the United States is part of the penalty provisions of sections 924(c)(1)(A) and 924(c)(5). Section 924(j), which contains separate provisions for punishment, does not contain any similar language that can be construed as a requirement of consecutive sentences. "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" United States v. Saunders, 318 F.3d 1257, 1264 (11th Cir. 2003) (quoting Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983)).

The United States argues that we must read the consecutive sentencing requirement of section 924(c)(1)(D)(ii) to apply to section 924(j) to avoid the anomaly that a criminal would have to receive a consecutive sentence for any violation of section 924(c) except for those violations that cause death, but we reject that interpretation. Our interpretation of section 924(j) does not prevent a

14

district court from imposing a sentence under section 924(c) that must run consecutive to a separate sentence imposed under section 924(j). We treat section 924(j) as creating a separate punishment for a crime that results in death, and we allow district courts to run concurrently sentences for crimes of violence and drug trafficking crimes that are predicates for a conviction under section 924(c), see United States v. Pinion, 4 F.3d 941, 945 (11th Cir. 1993). The main point of section 924(j) is to extend the death penalty to second-degree murders that occur in the course of violations of section 924(c). The heading of the section of the Violent Crime Control and Law Enforcement Act of 1994 that added section 924(j) supports this interpretation: "Death Penalty for Gun Murders During Federal Crimes of Violence and Drug Trafficking Crimes," Pub. L. 103-322, § 60013. See ASX Inv. Corp. v. Newton, 183 F.3d 1265, 1268 n.5 (11th Cir. 1999).

We are unpersuaded by the argument of the United States that the imposition of sentences under both section 924(c) and section 924(j) would violate the Double Jeopardy Clause of the Fifth Amendment. "If the statutes under which the defendant was sentenced specifically authorize cumulative punishments for the same offense, a court may impose cumulative punishment without running afoul of the Double Jeopardy Clause." United States v. Kaiser, 893 F.2d 1300, 1304 (11th Cir. 1990). We have held that the imposition of a sentence under both section

15

924(c) and a separate statute that increases the maximum sentence for a crime when a dangerous weapon is used does not violate the Double Jeopardy Clause because Congress intended to impose cumulative punishments.  See United States v. Dowd, 451 F.3d 1244, 1251–52 (11th Cir. 2006); United States v. Martin, 961 F.2d 161, 164 (11th Cir. 1992).  Section 924(j), like the statutes interpreted in Dowd and Martin, potentially increases the sentence for a crime when the criminal uses a firearm.  Section 924(c) provides that a criminal shall receive a sentence "in addition to," 18 U.S.C. § 924(c)(1)(A), any other sentence, and it is "irrelevant for Double Jeopardy purposes" that proof of a violation of section 924(j) "always proves a violation of § 924(c)."  Dowd, 451 F.3d at 1252 (quoting United States v. Singleton, 16 F.3d 1419, 1425 (5th Cir. 1994)).

We are unpersuaded by the decisions of the Eighth and Tenth Circuits that sentences imposed under section 924(j) must run consecutively based on section 924(c)(1)(D)(ii).  United States v. Dinwiddie, 618 F.3d 821, 837 (8th Cir. 2010); Battle, 289 F.3d at 668; United States v. Allen, 247 F.3d 741, 769 (8th Cir. 2001), vacated on other grounds, Allen v. United States, 536 U.S. 953, 122 S. Ct. 2653 (2002).  Both of those courts held that section 924(j) is a sentencing factor for section 924(c) and not a distinct offense, Battle, 289 F.3d at 666; Allen, 247 F.3d at 769, and we have explained above why we reject that reading of those

16

provisions. Neither court addressed the implications of its interpretation of section 924(j) under the Fifth and Sixth Amendments; neither court discussed the distinctions the Supreme Court drew between sentencing factors and elements in Harris and Castillo; and neither court considered that its interpretation of section 924(j) would render section 924(c)(5) surplusage.

## IV. CONCLUSION

We **VACATE** Julian's two consecutive life sentences and **REMAND** for further proceedings.