**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4634

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOSE ARMANDO BRAN, a/k/a Pantro,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:12-cr-00131-REP-1)

Argued: September 19, 2014          Decided: January 22, 2015

Amended:  January 23, 2015

Before KING, SHEDD, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the majority opinion, in which Judge Agee joined. Judge King wrote an opinion dissenting in part.

**ARGUED:** Mary Elizabeth Maguire, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Roderick C. Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

SHEDD, Circuit Judge:

A federal jury convicted Jose Armando Bran of five criminal counts relating to his involvement with the street gang La Mara Salvatrucha, also known as MS-13. On appeal, Bran primarily argues that the district court erred by denying his motion for judgment of acquittal on Count 3 and by imposing a mandatory consecutive sentence for his Count 3 conviction. For the following reasons, we affirm.

I

Bran was convicted of conspiracy to commit murder in aid of racketeering (Count 1); murder in aid of racketeering (Count 2); use of a firearm during a crime of violence causing death to another (Count 3); conspiracy to commit murder in aid of racketeering (Count 4); and maiming in aid of racketeering (Count 5). Counts 1, 2, and 3 arise from the murder of Osbin Hernandez-Gonzalez. Counts 4 and 5 arise from the attempted murder of Florintino Ayala. The district court sentenced Bran to 120 months for Count 1, mandatory life for Count 2, 120 months for Count 4, and 360 months for Count 5, all to run concurrently, and life for Count 3, to run consecutively to the sentences for Counts 1, 2, 4, and 5.

Generally, the government presented evidence at trial tending to establish that Bran was the leader of the Richmond Sailors Set, which is a violent clique of MS-13. During Bran's

2

involvement with the Sailors Set, the clique was a criminal enterprise engaged in drug trafficking, money transfers to MS-13 leadership in El Salvador, witness tampering, violent physical assaults – including the attempted murder of Ayala and the murder of Hernandez-Gonzalez – and other racketeering activities.

Bran's principal argument relates to his conviction and sentence on Count 3. In Count 3, the government charged Bran with violating three criminal statutes: 18 U.S.C. § 924(c)(1)(A), 18 U.S.C. § 924(j)(1), and 18 U.S.C. § 2. Section 924(c)(1)(A) "prohibits the use or carrying of a firearm in relation to a crime of violence or drug trafficking crime, or the possession of a firearm in furtherance of such crimes," and a violation of the statute "carries a mandatory minimum term of five years' imprisonment," United States v. O'Brien, 560 U.S. 218, 221 (2010), which must run consecutively to any other sentence, Abbott v. United States, 562 U.S. 8, 23 (2010). Section 924(j)(1) provides that a person who causes the murder of another through the use of a firearm in the course of committing a violation of § 924(c) shall "be punished by death or by imprisonment for any term of years or for life." Section 2 provides that a person "is punishable as a principal" if the person: (a) "aids, abets, counsels, commands, induces or procures" the commission of a criminal offense; or (b)

3

"willfully causes an act to be done which if directly performed by him or another" would be a criminal offense.

Pertinent to Count 3, the government presented evidence tending to establish that in July 2011, Bran ordered prospective MS-13 members Jeremy Soto and Luis Cabello to murder Hernandez-Gonzalez, whom Bran believed to be an informant for a rival gang. Bran further instructed Michael Arevalo, another Sailors Set member, to ensure Soto and Cabello successfully killed Hernandez-Gonzalez. Bran gave Soto and Cabello a firearm to commit the murder. Pursuant to Bran's order, Arevalo, Soto, and Cabello led Hernandez-Gonzalez to a path along the James River, where they shot him four times using Arevalo's firearm, stole his cellphone, and left him to die which he did soon thereafter. Soto and Cabello were later initiated into Sailors Set for their participation in the murder.

Regarding Count 3, the district court instructed the jury that the government had to prove three elements beyond a reasonable doubt: (1) that Bran aided and abetted the murder of Hernandez-Gonzalez; (2) that during and in relation to commission of the murder, Bran knowingly aided or abetted the use, carriage, or discharge of a firearm; and (3) that the firearm caused the death of Hernandez-Gonzalez. The court further instructed the jury that Bran could be convicted on

4

Count 3 under the theory of aiding and abetting. Bran did not object to the jury instructions.

On the verdict form, the district court titled Count 3 "Use of a Firearm During a Crime of Violence Causing Death to Another." J.A. 1311. The court instructed the jury to return a general verdict on Count 3 and, if the jury determined Bran was guilty, to then answer a three-part special interrogatory. The interrogatory asked the jury to state whether Bran aided, abetted, counseled, commanded, induced, or caused another to: (1) use a firearm during and in relation to a crime of violence; (2) carry a firearm during and in relation to a crime of violence; and/or (3) cause a firearm to be discharged during and in relation to a crime of violence. The court instructed the jury that in answering the interrogatory, it should check which fact or facts, if any, it unanimously found the government proved beyond a reasonable doubt. Bran did not object to the verdict form or the instructions by the court.

The jury returned guilty verdicts on all counts. As to Count 3, the jury returned a general verdict of guilty and answered in response to the special interrogatory that Bran aided, abetted, counseled, commanded, induced, or caused another to cause a firearm to be discharged during and in relation to a crime of violence. Because the jury did not find that Bran aided or abetted another to <u>use</u> or <u>carry</u> a firearm during and in

5

relation to a crime of violence, the district court convened counsel upon receipt of the verdict to discuss the implications of the jury's answer to the special interrogatory. Ultimately, all parties agreed that it would be inappropriate to ask the jury any further questions about the verdict and to "go with the verdict form as it is." J.A. 1299.

Bran thereafter moved for judgment of acquittal arguing, among other things, that the jury's failure to specifically find "use" of a firearm amounts to an acquittal on the § 924(j) offense. The district court denied the motion. At sentencing, the court imposed a life sentence for Count 3. Over Bran's objection, the court determined that § 924(c)(1)(A)(iii) mandates that the § 924(j) life sentence run consecutively to the sentences imposed for Counts 1, 2, 4 and 5.

## II

As we have noted, Bran's main arguments on appeal relate to Count 3. Specifically, he contends that the jury verdict is insufficient to support a conviction under § 924(j) and, therefore, the district court erred in denying his motion for judgment of acquittal. Further, he argues that the court erred in interpreting § 924(j) to require a mandatory consecutive sentence.

A.

Bran couches his challenge to his conviction under § 924(j)[1] as a challenge to the sufficiency of the evidence. We review a challenge to the sufficiency of the evidence de novo, United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005), and we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it, Burks v. United States, 437 U.S. 1, 17 (1978). Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. Alerre, 430 F.3d at 693. A defendant bringing a sufficiency challenge "must overcome a heavy burden," United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995), and reversal for insufficiency must "be confined to cases where the prosecution's failure is clear," Burks, 437 U.S. at 17.

---

[1] The appeal in this case was, at the very least, muddled. Throughout his appeal, Bran argued he had been convicted under § 924(c), until his rebuttal at oral argument when he argued for the first time his conviction was under § 924(j). The government appeared to argue in its brief that Bran had been convicted of both a violation of § 924(c) and § 924(j). However, at oral argument the government stated that Bran had been convicted only under § 924(j). Nevertheless, by the end of oral argument, both sides agreed with the district court that Bran had been convicted, if at all, under § 924(j).

In order to prove a violation of § 924(j), the government must prove: "(1) the use of a firearm to cause the death of a person and (2) the commission of a § 924(c) violation." United States v. Robinson, 275 F.3d 371, 378 (4th Cir. 2001). A defendant can be convicted for aiding and abetting a § 924(j) violation. See United States v. Foster, 507 F.3d 233, 246 (4th Cir. 2007).

We hold that the evidence is clearly sufficient to support Bran's conviction under § 924(j). The jury was presented with substantial evidence from which to find that Bran aided and abetted the murder of Hernandez-Gonzalez through the use of a firearm. As noted, the government presented evidence that Bran commanded Soto and Cabello to murder Hernandez-Gonzalez, and he provided them with a firearm to commit the murder.[2] Bran also directed Arevalo to ensure the murder was successful.

Despite the fact that Bran generally characterizes the challenge to his conviction under § 924(j) as a challenge to the sufficiency of the evidence, his specific argument focuses more narrowly on the jury verdict form and the effect of the special interrogatory answer. Bran does not seriously contend that the government failed to present adequate evidence for the jury to

---

[2] When Soto and Cabello were carrying out Bran's instruction, this gun misfired, so they used Arevalo's gun to carry out Bran's command to murder Hernandez-Gonzalez.

convict him under § 924(j). Rather, he claims that the jury actually acquitted him of the § 924(j) charge when it did not check the box that corresponded to the fact that Bran aided or abetted the use of a firearm on the special interrogatory. We disagree.

As an initial matter, Bran's argument ignores the jury's general verdict of guilt on Count 3. Without objection, the district court sufficiently instructed the jury as to the elements required to sustain a conviction under § 924(j) and the law of aiding and abetting under § 2. With those instructions, the jury found Bran guilty of aiding and abetting the "Use of a Firearm During a Crime of Violence Causing Death to Another."

While the jury's general guilty verdict alone is sufficient to uphold Bran's § 924(j) conviction, the jury's special finding regarding "caused a firearm to be discharged" further supports the § 924(j) conviction. In the context of the evidence presented at trial, the jury's finding of "caused a firearm to be discharged" necessarily includes a finding of "use of a firearm." See Smith v. United States, 508 U.S. 223, 240 (1993) (broadly defining "use" of a firearm for purposes of § 924(c)).

For the foregoing reasons, we affirm Bran's Count 3 conviction.[3]

B.

Bran also argues that even if we affirm his § 924(j) conviction, the district court erred by treating his sentence for Count 3 as a <u>mandatory</u> consecutive sentence. We review this issue de novo. <u>United States v. Lighty</u>, 616 F.3d 321, 370 (4th Cir. 2010).

All but one circuit court to consider this issue have held that a sentence imposed for a violation of § 924(j) must run consecutively to other sentences because Congress intended that punishment imposed for a § 924(j) violation be subject to the consecutive sentence mandate of § 924(c).[4] <u>See</u> <u>United States v. Berrios</u>, 676 F.3d 118, 143 (3d Cir. 2012) ("[B]ecause a § 924(j) sentence is imposed on a defendant for violating subsection (c),

---

[3] Bran also argues that the district court erred by denying his motion for judgment of acquittal as to each count of conviction because the evidence is insufficient to support a finding that he was involved in an enterprise engaged in racketeering activity. We hold that the evidence is more than sufficient for the jury to convict on all counts. Bran further contends that the court erred in denying his motion to exclude the government's expert testimony regarding the criminal street gang MS-13. We hold that the court did not abuse its discretion in admitting the expert testimony. <u>See</u> <u>United States v. Wilson</u>, 484 F.3d 267, 273 (4th Cir. 2007) (noting abuse of discretion standard).

[4] While these circuits may have differed in their view of § 924(j), they all agree on this point.

10

such a sentence is 'imposed under' subsection (c)."); United States v. Battle, 289 F.3d 661, 666 (10th Cir. 2002) ("The plain meaning of the words used in § 924(j) unequivocally provide that if the evidence shows a violation of § 924(c) . . ., a district court must impose a consecutive sentence over and above the punishment prescribed for the violent crime."); United States v. Allen, 247 F.3d 741, 769 (8th Cir. 2001) ("Although § 924(j) does not explicitly contain the same express mandatory cumulative punishment language as found in § 924(c), it incorporates § 924(c) by reference without disclaiming the cumulative punishment scheme which is so clearly set out in § 924(c)."), vacated on other grounds, 536 U.S. 953 (2002); see also United States v. Young, 561 F. App'x 85, 94 (2d Cir. 2014) (holding that § 924(j) "incorporates the penalty enhancements of § 924(c)"), cert. denied, 135 S. Ct. 387 (2014), and sub nom. Chambliss v. United States, 135 S. Ct. 388 (2014).

Only the Eleventh Circuit has held to the contrary. United States v. Julian, 633 F.3d 1250, 1253 (11th Cir. 2011). Bran argues that we should follow Julian, which held that a district court has discretion to decide whether to impose a concurrent or consecutive sentence for a § 924(j) violation. Julian, 633 F.3d at 1253–56. We find the Eleventh Circuit's reasoning unpersuasive.

11

When interpreting a statute, we apply its plain language, unless the result would be absurd. Lamie v. United States Tr., 540 U.S. 526, 534 (2004). We also consider the specific context in which that language is used, and the broader context of the statute as a whole. Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). Here, the plain language of § 924(j) does not expressly answer the question of whether any term of imprisonment imposed thereunder must be consecutive. However, the language itself suggests that such a sentence must be consecutive, and to read § 924(j) otherwise would create an absurd result.

Section 924(j)(1) reads: "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall – (1) if the killing is a murder . . . be punished by death[5] or by imprisonment for any term of years or for life." (emphasis added). At a minimum, the inclusion of the language "in the course of a violation of subsection (c)" indicates that § 924(c) plays a role in a § 924(j) offense and, to understand that role, we must consider § 924(j) in the context of § 924(c).

Section 924(c) sets out the elements required to violate that section. Additionally, § 924(c) sets out the nature of the

---

[5] The government did not seek the death penalty in this case.

punishment thereunder; such punishment must be consecutive. 18 U.S.C. § 924(c)(1)(D)(ii). No one, including Bran, contests those points. Viewed in this light, "[i]t takes no special insight or leap of logic to conclude that the central reason for Congress's choice of language in writing [§ 924(j)] – 'during the course of a violation of [§ 924(c)]' – was to ensure that separating out subsection (j) from subsection (c) did not deprive the law of a coherent sentencing scheme, the heart of which is the consecutive sentence mandate." Berrios, 676 F.3d at 141.

Further, because of the inclusion of the § 924(c) language, to prove a violation of § 924(j), the government must prove that a defendant also committed a violation of § 924(c). See United States v. Smith, 452 F.3d 323, 335–36 (4th Cir. 2006). Accordingly, a defendant who violates § 924(j) by definition violates § 924(c), and would necessarily face a mandatory consecutive sentence under § 924(c) if it had been charged as a freestanding offense. Therefore, to read § 924(j) as not subject to the consecutive sentence mandate of § 924(c) would mean that a defendant convicted under § 924(j) would face a more lenient sentencing scheme – under which a defendant's sentence would not have to be consecutive – simply because, in the course of violating § 924(c), he murdered someone. To read § 924(j) in this way would give rise to a truly absurd result with perverse

13

incentives; a defendant facing life or a term of years could create a more favorable sentencing environment for himself by committing a murder during his commission of the § 924(c) offense. See Berrios, 676 F.3d at 141; Battle, 289 F.3d at 668; Allen, 247 F.3d at 769. It is "highly 'unlikely that Congress, which clearly intended to impose additional cumulative punishments for using firearms during violent crimes in cases where no murder occurs, would turn around and not intend to impose cumulative punishments in cases where there are actual murder victims.'" Berrios, 676 F.3d at 141 (quoting Battle, 289 F.3d at 668); see also Allen, 247 F.3d at 769.[6]

                                III

For the foregoing reasons, we affirm the judgments of conviction and sentence.

                                                AFFIRMED

---

[6] Of course, Congress could legislate that a sentence imposed for a violation of § 924(j) need not be consecutive. However, in the absence of clear language or context, we should not presume they intended such an anomalous and absurd result. See Berrios, 676 F.3d at 141 ("In light of the statutory scheme and purpose shared by subsection (c) and subsection (j), we simply cannot impute a contradictory intent to Congress without some underlying rationale.").

14

KING, Circuit Judge, dissenting in part:

Because the district court was entitled to sentence Bran on Count III to something other than a mandatory consecutive life sentence, I respectfully dissent. In affirming Bran's sentence, my friends in the majority rely on the erroneous conclusion that 18 U.S.C. § 924(c) requires a consecutive sentence on Bran's § 924(j) conviction. As explained below, nothing in either § 924(c) or § 924(j) mandates such a ruling. I would therefore vacate Bran's sentence on Count III and remand.

The relationship between § 924(c) and § 924(j) is not insignificant — each criminalizes a firearm offense occurring during the commission of a crime of violence or a drug trafficking offense. Notwithstanding those two shared elements, § 924(j) has a third and independent element (conduct causing death). The penalty provisions of § 924(c) and § 924(j) are also distinct. Of importance in that regard, a sentence under § 924(c) must run consecutively to any other sentence. See 18 U.S.C. § 924(c)(1)(D)(ii) (the "consecutive sentence mandate"). The consecutive sentence mandate applies, however, to § 924(c) offenses only, as stated therein: "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." Id. (emphasis added); see United States v. Julian, 633 F.3d 1250,

15

1253 (11th Cir. 2011) (ruling that consecutive sentence mandate not applicable to § 924(j) offense).

It is now undisputed that, on Count III, Bran was convicted of violating § 924(j), an offense resulting in death "in the course of" a § 924(c) violation.  18 U.S.C. § 924(j).[1]  The alternative punishments authorized by § 924(j) — death, life, or a term of years — do not refer to the consecutive sentence mandate.  See id.[2]  Because a § 924(j) offense occurs in the course of a § 924(c) violation, however, the majority rules that the consecutive sentence mandate must be applied to a § 924(j)

---

[1] Prior to oral argument, Bran and the prosecution disagreed over whether Bran had been convicted of a § 924(c) offense or a § 924(j) offense.  That issue traced to the duplicitous indictment in this case, which alleged § 924(c) and § 924(j) offenses in a single count — Count III.  In briefing, Bran challenged his Count III conviction on the ground that the jury had acquitted him of the § 924(j) offense and convicted him of violating § 924(c) only.  At oral argument, Bran abandoned that position and agreed that he was convicted under § 924(j).

[2] Pursuant to § 924(j) of Title 18:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall —
>
> (1) if the killing is a murder (as defined in [18 U.S.C. §] 1111), be punished by death or by imprisonment for any term of years or for life.
>
> (2) if the killing is manslaughter (as defined in [18 U.S.C. §] 1112), be punished as provided in that section.

18 U.S.C. § 924(j).

16

offense to avoid an "absurd result." Ante at 12. The majority relates that a defendant convicted under § 924(j) would otherwise "face a more lenient sentencing scheme" than one convicted under § 924(c). Id. at 13. For reasons I view as compelling, I reject the majority's ruling.

1.

First, a § 924(j) offense is discrete from a § 924(c) offense, and must be treated accordingly. As we recognized years ago, a § 924(j) offense is a separate violation of federal law. See United States v. Johnson (Shaheem), 219 F.3d 349 (4th Cir. 2000). Judge Luttig's opinion for the Court in that case spelled out the elements of a § 924(j) offense: "(1) a drug trafficking crime committed, (2) the use of a firearm during the commission of the trafficking crime, and (3) malice aforethought in causing the death of the victim in relation to the commission of the crime." Id. at 358 n.7. Soon thereafter, in United States v. Robinson, Judge Wilkins's opinion treated a § 924(j) violation in a like manner. See 275 F.3d 371, 379 (4th Cir. 2001).

Nevertheless, the majority argues that its ruling today — that the consecutive sentencing mandate applies to a § 924(j) offense — garners support from four of our sister circuits. Those decisions, however, analyzed the relationship between § 924(c) and § 924(j) in a fundamentally different manner than

17

does the majority. Two of those courts ruled that § 924(j) is a sentencing factor only, and not a separate offense. See United States v. Battle, 289 F.2d 661, 667 (10th Cir. 2002) ("Section 924(j) does not set forth a discrete crime."); United States v. Allen, 247 F.3d 741, 769 (8th Cir. 2001) (concluding that "§ 924(j) is fairly interpreted as an additional aggravating punishment for the scheme already set out in § 924(c)"). Two other courts of appeals failed to definitively resolve the discrete offense issue. See United States v. Berrios, 676 F.3d 118, 140 (3d Cir. 2012) ("Although the government concedes that § 924(j) establishes a discrete crime from § 924(c), this has no bearing on our decision."); see also United States v. Young, 561 F. App'x 85, 94 (2d Cir. 2014) (unpublished) (observing that § 924(j) "likely indicates that it is a stand-alone offense"), cert. denied, 135 S. Ct. 387 (2014).

My position in this regard is simple. I would apply the reasoning of the Eleventh Circuit in Julian, which is consistent with our decisions in Johnson (Shaheem) and Robinson. See 633 F.3d at 1254. That is, § 924(j) constitutes a discrete offense from § 924(c), and thus can only be punished under § 924(j).

2.

The foregoing discussion leads to my second point: Because § 924(j) is a discrete offense from a § 924(c) violation, a sentence under § 924(j) does not produce an absurd result. And,

18

absent an express statutory mandate to the contrary, a federal criminal offense does not require either a concurrent or a consecutive sentence. That decision with respect to sentencing is reserved to the discretion of the district court. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."); see also United States v. Johnson (Keith), 138 F.3d 115, 119 (4th Cir. 1998) (determining that § 3584(a) "gives district courts discretion in choosing concurrent or consecutive terms of imprisonment"). Nonetheless, the majority cites the Supreme Court as foreclosing application of the plain text of § 924(j). Ante at 12 (citing Lamie v. United States Trustee, 540 U.S. 526 (2004)). In its Lamie decision, however, the Court carefully emphasized that "[i]t is well established that 'when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.'" Lamie, 540 U.S. at 534 (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)). Because § 924(j) does not require a particular disposition, we should simply enforce its plain terms.

In any event, applying the plain terms of § 924(j) does not produce an absurd result. As the government conceded at oral

19

argument, the potential availability of a death penalty is the reason a prosecutor would pursue a charge under § 924(j).  See Julian, 633 F.3d at 1256 ("The main point of section 924(j) is to extend the death penalty to second-degree murders that occur in the course of violations of section 924(c)."). To me, it defies common sense to contend that a death sentence for a § 924(j) offense creates a more lenient sentencing scheme than a non-death sentence under § 924(c).[3]  Similarly, I readily reject the majority's contention that § 924(j) creates "perverse incentives" for an aspiring criminal.  Ante at 13-14.  To the contrary, a person contemplating commission of a § 924(c) offense is not likely to commit murder merely to avoid the consecutive sentence mandate.

On this record, we are obliged to presume that Congress properly assessed each of the foregoing considerations when it enacted § 924(j).  See Russello v. United States, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")

---

[3] I note that the death penalty is potentially available under § 924(c)(5) for causing death by use of armor piercing ammunition.  See 18 U.S.C. § 924(c)(5)(B)(i).  Bran, however, was not charged with any such offense.

(brackets omitted). Rather than second-guess Congress and judicially amend § 924(j) to include the consecutive sentence mandate, I would simply rule that § 924(j) — rather than § 924(c) — controls Bran's sentence for the § 924 offense in Count III.

Pursuant to the foregoing, I would vacate Bran's consecutive life sentence on Count III and remand. The sentencing court should be entitled to exercise its informed discretion, pursuant to 18 U.S.C. § 3584, to impose a sentence on Count III that is either consecutive or concurrent.

I respectfully dissent.