Affirmed by published opinion. Judge SHEDD wrote the majority opinion, in which Judge AGEE joined. Judge KING wrote an opinion dissenting in part.
SHEDD, Circuit Judge:
A federal jury convicted Jose Armando Bran of five criminal counts relating to his involvement with the street gang La Mara Salvatrucha, also known as MS-13. On appeal, Bran primarily argues that the district court erred by denying his motion for judgment of acquittal on Count 3 and by imposing a mandatory consecutive sentence for his Count 3 conviction. For the following reasons, we affirm.
I
Bran was convicted of conspiracy to commit murder in aid of racketeering (Count 1); murder in aid of racketeering (Count 2); use of a firearm during a crime of violence causing death to another (Count 3); conspiracy to commit murder in aid of racketeering (Count 4); and maiming in aid of racketeering (Count 5). Counts 1, 2, and 3 arise from the murder of Osbin Hernandez-Gonzalez. Counts 4 and 5 arise from the attempted murder of Florintino Ayala. The district court sentenced Bran to 120 months for Count 1, mandatory life for Count 2,120 months for Count 4, and 360 months for Count 5, all to run concurrently, and life for Count 3, to run consecutively to the sentences for Counts 1, 2, 4, and 5.
*278 Generally, the government presented evidence at trial tending to establish that Bran was the leader of the Richmond Sailors Set, which is a violent clique of MS-13. During Bran’s involvement with the Sailors Set, the clique was a criminal enterprise engaged in drug trafficking, money transfers to MS-13 leadership in El Salvador, witness tampering, violent physical assaults — including the attempted murder of Ayala and the murder of Hernandez-Gonzalez — and other racketeering activities.
Bran’s principal argument relates to his conviction and sentence on Count 3. In Count 3, the government charged Bran with violating three criminal statutes: 18 U.S.C. § 924(c)(1)(A), 18 U.S.C. § 924(j)(l), and 18 U.S.C. § 2. Section 924(c)(1)(A) “prohibits the use or carrying of a firearm in relation to a crime of violence or drug trafficking crime, or the possession of a firearm in furtherance of such crimes,” and a violation of the statute “carries a mandatory minimum term of five years’ imprisonment,” United States v. O’Brien, 560 U.S. 218, 221, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010), which must run consecutively to any other sentence, Abbott v. United States, 562 U.S. 8, 23, 131 S.Ct. 18, 178 L.Ed.2d 348 (2010). Section 924(j)(l) provides that a person who causes the murder of another through the use of a firearm in the course of committing a violation of § 924(c) shall “be punished by death or by imprisonment for any term of years or for life.” Section 2 provides that a person “is punishable as a principal” if the person: (a) “aids, abets, counsels, commands, induces or procures” the commission of a criminal offense; or (b) “willfully causes an act to be done which if directly performed by him or another” would be a criminal offense.
Pertinent to Count 3, the government presented evidence tending to establish that in July 2011, Bran ordered prospective MS-13 members Jeremy Soto and Luis Cabello to murder Hernandez-Gonzalez, whom Bran believed to be an informant for a rival gang. Bran further instructed Michael Arevalo, another Sailors Set member, to ensure Soto and Cabello successfully killed Hernandez-Gonzalez. Bran gave Soto and Cabello a firearm to commit the murder. Pursuant to Bran’s order, Arevalo, Soto, and Cabello led Hernandez-Gonzalez to a path along the James River, where they shot him four times using Arevalo’s firearm, stole his cellphone, and left him to die which he did soon thereafter. Soto and Cabello were later initiated into Sailors Set for their participation in the murder.
Regarding Count 3, the district court instructed the jury that the government had to prove three elements beyond a reasonable doubt: (1) that Bran aided and abetted the murder of Hernandez-Gonzalez; (2) that during and in relation to commission of the murder, Bran knowingly aided or abetted the use, carriage, or discharge of a firearm; and (3) that the firearm caused the death of Hernandez-Gonzalez. The court further instructed the jury that Bran could be convicted on Count 3 under the theory of aiding and abetting. Bran did not object to the jury instructions.
On the verdict form, the district court titled Count 3 “Use of a Firearm During a Crime of Violence Causing Death to Another.” J.A. 1311. The court instructed the jury to return a general verdict on Count 3 and, if the jury determined Bran was guilty, to then answer a three-part special interrogatory. The interrogatory asked the jury to state whether Bran aided, abetted, counseled, commanded, induced, or caused another to: (1) use a firearm during and in relation to a crime of violence; carry a firearm during and in *279 relation to a crime of violence; and/or (3) cause a firearm to be discharged during and in relation to a crime of violence. The court instructed the jury that in answering the interrogatory, it should check which fact or facts, if any, it unanimously found the government proved beyond a reasonable doubt. Bran did not object to the verdict form, or the instructions by the court.
The jury returned guilty verdicts on all counts. As to Count 3, the jury returned a general verdict of guilty and answered in response to the special interrogatory that Bran aided, abetted, counseled, commanded, induced, or caused another to cause a firearm to be discharged during and in relation to a crime of violence. Because the jury did not find that Bran aided or abetted another to use or carry a firearm during and in relation to a crime of violence, the district court convened counsel upon receipt of the verdict to discuss the implications of the jury’s answer to the special interrogatory. Ultimately, all parties agreed that it would be inappropriate to ask the jury any further questions about the verdict and to “go with the verdict form as it is.” J.A. 1299.
Bran thereafter moved for judgment of acquittal arguing, among other things, that the jury’s failure to specifically find “use” of a firearm amounts to an acquittal on the § 924(j) offense. The district court denied the motion. At sentencing, the court imposed a life sentence for Count 3. Over Bran’s objection, the court determined that § 924(c)(l)(A)(iii) mandates that the § 924(j) life sentence run consecutively to the sentences imposed for Counts 1, 2, 4 and 5.
II
As we have noted, Bran’s main arguments on appeal relate to Count 3. Specifically, he contends that the jury verdict is insufficient to support a conviction under § 924(j) and, therefore, the district court erred in denying his motion for judgment of acquittal. Further, he argues that the court erred in interpreting § 924(j) to require a mandatory consecutive sentence.
A.
Bran couches his challenge to his conviction under § 924(j)[1] as a challenge to the sufficiency of the evidence. We review a challenge to the sufficiency of the evidence de novo, United States v. Alerre, 430 F.3d 681, 693 (4th Cir.2005), and we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it, Burks v. United States, 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant’s guilt beyond a reasonable doubt. Alerre, 430 F.3d at 693. A defendant bringing a sufficiency challenge “must overcome a heavy burden,” United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir.1995), and reversal for insufficiency must “be confined to cases where the prosecution’s failure is clear,” Burks, 437 U.S. at 17, 98 S.Ct. 2141.
*280 In order to prove a violation of § 924(j), the government must prove: “(1) the use of a firearm to cause the death of a person and (2) the commission of a § 924(c) violation.” United States v. Robinson, 275 F.3d 371, 378 (4th Cir.2001). A defendant can be convicted for aiding and abetting a § 924(j) violation. See United States v. Foster, 507 F.3d 233, 246 (4th Cir.2007).
We hold that the evidence is clearly sufficient to support Bran’s conviction under § 924(j). The jury was presented with substantial evidence from which to find that Bran aided and abetted the murder of Hernandez-Gonzalez through the use of a firearm. As noted, the government presented evidence that Bran commanded Soto and Cabello to murder Hernandez-Gonzalez, and he provided them with a firearm to commit the murder.[2] Bran also directed Arevalo to ensure the murder was successful.
Despite the fact that Bran generally characterizes the challenge to his conviction under § 924(¡) as a challenge to the sufficiency of the evidence, his specific argument focuses more narrowly on the jury verdict form and the effect of the special interrogatory answer. Bran does not seriously contend that the government failed to present adequate evidence for the jury to convict him under § 924(j). Rather, he claims that the jury actually acquitted him of the § 924(j) charge when it did not check the box that corresponded to the fact that Bran aided or abetted the use of a firearm on the special interrogatory. We disagree.
As an initial matter, Bran’s argument ignores the jury’s general verdict of guilt on Count 3. Without objection, the district court sufficiently instructed the jury as to the elements required to sustain a conviction under § 924(j) and the law of aiding and abetting under § 2. With those instructions, the jury found Bran guilty of aiding and abetting the “Use of a Firearm During a Crime of Violence Causing Death to Another.”
While the jury’s general guilty verdict alone is sufficient to uphold Bran’s § 924(j) conviction, the jury’s special finding regarding “caused a firearm to be discharged” further supports the § 924(j) conviction. In the context of the evidence presented at trial, the jury’s finding of “caused a firearm to be discharged” necessarily includes a finding of “use of a firearm.” See Smith v. United States, 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (broadly defining “use” of a firearm for purposes of § 924(c)).
For the foregoing reasons, we affirm Bran’s Count 3 conviction.[3]
B.
Bran also argues that even if we affirm his § 924(j) conviction, the district court erred by treating his sentence for Count 3 as a mandatory consecutive sen *281 tence. We review this issue de novo. United States v. Lighty, 616 F.3d 321, 370 (4th Cir.2010).
All but one circuit court to consider this issue have held that a sentence imposed for a violation of § 924(j) must run consecutively to other sentences because Congress intended that punishment imposed for a § 924(j) violation be subject to the consecutive sentence mandate of § 924(c).[4] See United States v. Berrios, 676 F.3d 118, 143 (3d Cir.2012) (“[Bjecause a § 924(j) sentence is imposed on a defendant for violating subsection (c), such a sentence is ‘imposed under’ subsection (c).”); United States v. Battle, 289 F.3d 661, 666 (10th Cir.2002) (“The plain meaning of the words used in § 924(j) unequivocally provide that if the evidence shows a violation of § 924(c) ..., a district court must impose a consecutive sentence over and above the punishment prescribed for the violent crime.”); United States v. Allen, 247 F.3d 741, 769 (8th Cir.2001) (“Although § 924(j) does not explicitly contain the same express mandatory cumulative punishment language as found in § 924(c), it incorporates § 924(c) by reference without disclaiming the cumulative punishment scheme which is so clearly set out in § 924(c).”), vacated on other grounds, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002); see also United States v. Young, 561 Fed.Appx. 85, 94 (2d Cir.2014) (holding that § 924(j) “incorporates the penalty enhancements of § 924(c)”), cert. denied, — U.S. -, 135 S.Ct. 387, 190 L.Ed.2d 273 (2014), and sub nom. Chambliss v. United States, — U.S. -, 135 S.Ct. 388, 190 L.Ed.2d 274 (2014).
Only the Eleventh Circuit has held to the contrary. United States v. Julian, 633 F.3d 1250, 1253 (11th Cir.2011). Bran argues that we should follow Julian, which held that a district court has discretion to decide whether to impose a concurrent or consecutive sentence for a § 924(j) violation. Julian, 633 F.3d at 1253-56. We find the Eleventh Circuit’s reasoning unpersuasive.
When interpreting a statute, we apply its plain language, unless the result would be absurd. Lamie v. United States Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). We also consider the specific context in which that language is used, and the broader context of the statute as a whole. Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Here, the plain language of § 924(j) does not expressly answer the question of whether any term of imprisonment imposed thereunder must be consecutive. However, the language itself suggests that such a sentence must be consecutive, and to read § 924(j) otherwise would create an absurd result.
Section 924(j)(l) reads: “A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall — (1) if the killing is a murder ... be punished by death[5] or by imprisonment for any term of years or for life.” (emphasis added). At a minimum, the inclusion of the language “in the course of a violation of subsection (c)” indicates that § 924(c) plays a role in a § 924(j) offense and, to understand that role, we must consider § 924(j) in the context of § 924(c).
Section 924(c) sets out the elements required to violate that section. Additionally, § 924(c) sets out the nature of the punishment thereunder; such punishment *282 must be consecutive. 18 U.S.C. § 924(c)(l)(D)(ii). No one, including Bran, contests those points. Viewed in this light, “[i]t takes no special insight or leap of logic to conclude that the central reason for Congress’s choice of language in writing [§ 924© ] — ‘during the course of a violation of [§ 924(c)]’ — was to ensure that separating out subsection (j) from subsection (c) did not deprive the law of a coherent sentencing scheme, the heart of which is the consecutive sentence mandate.” Berrios, 676 F.3d at 141.
Further, because of the inclusion of the § 924(c) language, to prove a violation of § 924(j), the government must prove that a defendant also committed a violation of § 924(c). See United States v. Smith, 452 F.3d 323, 335-36 (4th Cir.2006). Accordingly, a defendant who violates § 924® by definition violates § 924(c), and would necessarily face a mandatory consecutive sentence under § 924(c) if it had been charged as a freestanding offense. Therefore, to read § 924© as not subject to the consecutive sentence mandate of § 924(c) would mean that a defendant convicted under § 924® would face a more lenient sentencing scheme — under which a defendant’s sentence would not have to be consecutive — simply because, in the course of violating § 924(c), he murdered someone. To read § 924© in this way would give rise to a truly absurd result with perverse incentives; a defendant facing life or a term of years could create a more favorable sentencing environment for himself by committing a murder during his commission of the § 924(c) offense. See Berrios, 676 F.3d at 141; Battle, 289 F.3d at 668; Allen, 247 F.3d at 769. It is “highly ‘unlikely that Congress, which clearly intended to impose additional cumulative punishments for using firearms during violent crimes in cases where no murder occurs, would turn around and not intend to impose cumulative punishments in cases where there are actual murder victims.’ ” Berrios, 676 F.3d at 141 (quoting Battle, 289 F.3d at 668); see also Allen, 247 F.3d at 769.[6]
Ill
For the foregoing reasons, we affirm the judgments of conviction and sentence.

AFFIRMED.

. The appeal in this case was, at the very least, muddled. Throughout his appeal, Bran argued he had been convicted under § 924(c), until his rebuttal at oral argument when he argued for the first time his conviction was under § 924(j). The government appeared to argue in its brief that Bran had been convicted of both a violation of § 924(c) and § 924(j). However, at oral argument the government stated that Bran had been convicted only under § 924(j). Nevertheless, by the end of oral argument, both sides agreed with the district court that Bran had been convicted, if at all, under § 924(j).

. When Soto and Cabello were carrying out Bran’s instruction, this gun misfired, so they used Arevalo's gun to carry out Bran’s command to murder Hernandez-Gonzalez.

. Bran also argues that the district court erred by denying his motion for judgment of acquittal as to each count of conviction because the evidence is insufficient to support a finding that he was involved in an enterprise engaged in racketeering activity. We hold that the evidence is more than sufficient for the jury to convict on all counts. Bran further contends that the court erred in denying his motion to exclude the government's expert testimony regarding the criminal street gang MS-13. We hold that the court did not abuse its discretion in admitting the expert testimony. See United States v. Wilson, 484 F.3d 267, 273 (4th Cir.2007) (noting abuse of discretion standard).

. While these circuits may have differed in their view of § 924(j), they all agree on this point.

. The government did not seek the death penalty in this case.

. Of course, Congress could legislate that a sentence imposed for a violation of § 924(j) need not be consecutive. However, in the absence of clear language or context, we should not presume they intended such an anomalous and absurd result. See Berrios, 676 F.3d at 141 ("In light of the statutory scheme and purpose shared by subsection (c) and subsection (j), we simply cannot impute a contradictory intent to Congress without some underlying rationale.”).